**HOME SAVINGS OF AMERICA, F.S.B., and H.F. Ahmanson & Co., Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

No. 92–620C.

United States Court of Federal Claims.

Dec. 30, 2005.

188

Michael A. Carvin, Washington, D.C., argued for plaintiffs. With him on the briefs were Debra L. Satinoff, Washington, D.C.; and Steven S. Rosenthal, Jeffery A. Tomasevich, and Douglas A. Tucker, each of Washington, D.C., as of counsel.

Sameer Yerawadekar, Trial Attorney, Commercial Litigation Branch, United States Department of Justice, argued for defendant. With him on the briefs were Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, John N. Kane, Jr.,

Trial Attorney, and Jerome A. Madden, Trial Attorney, as of counsel.

### OPINION

BRUGGINK, Judge.

This case returns to us from the Federal Circuit after its decision to partially affirm and partially vacate and remand. Pending is plaintiffs' "Motion for a Designation of Partial Judgment with Respect to $134,045,000 Award and an Order Directing Defendant to Pay Such Judgment as Affirmed by the Federal Circuit." Plaintiffs seek immediate enforcement of the final judgment and mandate issued by the Federal Circuit with regard to the award of $134 million, though one issue is still pending on remand. Oral argument was held on September 21, 2005. The court thereafter requested additional briefing. Defendant's opportunity to seek review of the Federal Circuit decision by *certiorari* lapsed on November 25, 2005. The issue is thus ripe for resolution. For the following reasons, plaintiffs' motion is granted.

### BACKGROUND

We assume a basic knowledge of the underlying facts. Few details are necessary for the resolution of this specific issue. Plaintiffs, Home Savings of America, F.S.B. and its holding company, H.F. Ahmanson & Co. (collectively referred to as "Home"), entered into a series of contracts with the government in which the government agreed to allow certain favorable accounting treatment to Home in exchange for Home's supervised acquisition of several failing depository institutions. In an earlier opinion, we identified five transactions, one of which was referred to as the Ohio transaction; that transaction included the acquisition of one federally-insured thrift and four previously Ohio-insured thrifts. *Home Sav. of Am., F.S.B. v. United States,* 50 Fed.Cl. 427, 429 (2001) (*"Home Savings I"*). With the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, and its corresponding regulations, Home and many other similarly situated institutions were no longer allowed to utilize the agreed upon accounting treatment, causing financial loss.

Home brought suit in this court against the United States alleging that the enactment of FIRREA constituted a breach of contract.

We resolved issues of liability during motion practice. *Home Sav. of Am., F.S.B. v. United States*, 51 Fed.Cl. 487 (2002) (*"Home II"*); *Home Savings I*, 50 Fed.Cl. at 439, 442. We held that the government breached its contracts with Home and was liable for the loss suffered by the change in accounting methods used for thrifts that were federally insured. We held, however, that the federal government did not have the authority to make any promises regarding state-insured institutions. We therefore denied recovery regarding plaintiffs' acquisition of Ohio-insured banks. After trial, we found that plaintiffs were entitled to damages in the amount of $134,045,000 for the federally-insured thrifts. This included damages for the one federally-insured thrift that Home acquired in the Ohio transaction. *Home Sav. of Am., F.S.B. v. United States*, 57 Fed.Cl. 694 (2003) (*"Home Savings III"*).

On appeal, the Federal Circuit agreed with our decision with regard to "privity, liability with respect to the federally-insured thrifts, and [$134 million in] damages" and therefore affirmed that portion of our decision. *Home Sav. of Am., F.S.B. v. United States*, 399 F.3d 1341, 1358 (Fed.Cir.2005) (*"Home Savings IV"*). The court, however, vacated and remanded with respect to the Ohio-insured banks issue. *See id.* at 1344. Mandate was issued as a judgment on July 5, 2005. Plaintiffs subsequently sought payment of the $134 million award. Defendant, however, refused to authorize payment on the ground that the judgment was not final. Home then filed this motion. In the meantime, defendant's opportunity to seek a writ of *certiorari* from the Supreme Court for the Federal Circuit's decision expired on November 25, 2005, after two extensions.

The present procedural motion raises the question of whether we can enter a judgment with regard solely to the $134 million award affirmed by the Federal Circuit and require the government to make payment in that amount now, before we issue a decision as to the Ohio-insured banks. The dispute matters because, as plaintiffs point out, interest does not accrue on the affirmed award.

## DISCUSSION

Plaintiffs argue that our first judgment became final to the extent that it was affirmed by the Federal Circuit, specifically with respect to the determination of $134 million in damages. They claim that because defendant did not seek a stay of the Federal Circuit's mandate, we have no discretion to ignore the directive of the Federal Circuit and must enforce payment. The fact that the Ohio-insured banks issue was remanded, they argue, does not make the affirmance of liability and $134 million in damages any less final. Plaintiffs point out that 28 U.S.C. § 2517 (2000), the statute governing when payment from the federal government should be made on a judgment, allows for payment of partial judgments. The statute does not specify that partial judgment must originate from the use of the Rules of the Court of Federal Claims ("RCFC") 54(b), the rule normally available to a trial court to sever claims for separate judgments.

Defendant makes two arguments in opposition to plaintiffs' motion. The first is that we do not have the authority to split the action and enter a partial final judgment. The government contends that the only mechanism available to us for splitting an action into multiple judgments is Rule 54(b).[1] It further contends that the requirements of that rule are not satisfied here, citing *Adams v. United States*, 51 Fed.Cl. 57 (2001).[2]

---

1. RCFC 54(b) is nearly identical to Federal Rules of Civil Procedure 54(b). RCFC 54(b) states:

    **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counter-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for

delay and upon an express direction for the entry of judgment.

2. *Adams* holds that the following factors should be taken into consideration when determining if multiple claims are present for the purposes of Rule 54(b):

    (1) The extent of factual overlap; (2) whether separate causes of action depend upon proof of different facts or have different burdens of proof; (3) whether the application of res judi-

In response, plaintiffs distinguish this case from *Adams.* In *Adams,* there was a concern that splitting and allowing two judgments may create conflicting judgments. *Adams,* 51 Fed.Cl. at 60. Here, that is not an issue. As plaintiffs correctly assert, a decision in Home's favor on remand could only increase Home's damages award. If we decide in favor of defendant on the Ohio-insured thrifts issue, it will have no effect on Home's $134 million award.

We agree with plaintiffs that Rule 54(b) is not the only relevant mechanism for deciding the question. As we explain below, Rule 54(b) presents a trial court with options prior to appeal. We find ourselves in a different posture. We believe the outcome here is controlled by the Federal Circuit's decision in *King Instrument Corp. v. Otari Corp.,* 814 F.2d 1560 (Fed.Cir.1987), in which the court of appeals was faced on a second appeal with the entry by the trial court of a partial final judgment. Because of its importance we will explore in some detail the facts of *King.*

King had developed and patented a device which automatically loaded tape into closed cassettes. *King,* 814 F.2d at 1561 (citing *King Instr. Corp. v. Otari Corp.,* 767 F.2d 853 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986)). The district court held that King had a valid patent which Otari, creating a similar device, had infringed. *Id.* The court ordered damages for lost profits ("machine damages"), totaling $2,282,935, and $438,810 for damages from the sale of spare parts ("spare parts damages"). *Id.* The court also entered a permanent injunction against Otari. *Id.* During an initial appeal, the Federal Circuit "affirmed the trial court's conclusion that the ... patent was valid and infringed and also affirmed the award of machine damages." *Id.* However, the court also vacated and remanded the trial court's spare parts damages determination based on an insufficient record "to support the District Court's conclusory statement that the lost profits from the sale

cata considerations suggest that the claims are linked; and (4) whether the multiple relief is for the same injury.
51 Fed.Cl. at 59. The intent of Rule 54(b) is to move a portion of a case forward when "there is no just reason for delay." Though we are not

of parts ... is $438,810." *Id.* (internal quotation marks omitted). Subsequently, King sought and received a modified judgment from the district court "confirming the original machine damages and ordering execution thereof but reserving for a later determination ... the amount, if any, of spare parts damages." *Id.* at 1562.

Otari appealed to the Federal Circuit, challenging the district court's power to modify its earlier judgment and order immediate execution of the affirmed portion while preserving the issue of spare parts damages. *See id.* In response, King moved to dismiss, questioning the court's authority to hear the appeal. King argued that the trial court's modified judgment was not final because the remand was still unresolved. *Id.* The Federal Circuit rejected King's argument and held that the modified judgment was final. The court stated that the "Supreme Court has long espoused a liberal interpretation of the final judgment rule where there is an order for an immediate execution." *Id.* It relied on an 1848 decision of the Supreme Court, *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404 (1848): " 'When the decree ... directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent ....' " *Id.* The Federal Circuit held that the modified judgment was therefore final and appealable. *King,* 814 F.2d at 1563.

Having found jurisdiction, however, the appellate court then rejected Otari's argument that the district court judgment impermissibly split claims arising out of the same facts, contrary to FRCP 54(b). 814 F.2d at 1563. The court held that Rule 54(b) was not applicable, as it only concerned the trial court's authority prior to appeal:

Clearly it was within the court's power ... to affirm that portion of the trial court's determination as to machine damages, remand the issue of damages pertaining to

relying on Rule 54(b), the procedures we employ here are intended to accomplish the same purpose. Defendants have failed to offer any just reason for delaying enforcement of the award now that the time for filing a petition for *certiorari* has expired.

spare parts, and to provide explicitly that final judgment be entered as to machine sales. We did not in terms do the latter but the District Court certainly did not go counter to our mandate or its spirit. Under the law of the case doctrine, that court was absolutely bound by our affirmance as to the machine damages. It was therefore not incorrect or an abuse of discretion for the trial judge to order execution on that portion of the judgment which was final, while reserving the issue of spare parts.

*Id.* (citations omitted). The Federal Circuit held that the district court had authority to execute the affirmed portion of the judgment prior to reviewing the remanded issues. *Id.* at 1564.

The government contends that *King* is distinguishable because the defendant in that case was a private party that did not have the statutory protection available to the United States to withhold payment of judgments until they are final. We view that fact as irrelevant. Defendant seeks the shelter of 31 U.S.C. § 1304 (2000) [3] to avoid payment of the $134 million until the Ohio-insured thrifts issue comes to a conclusion. Section 1304 states when payment from the Judgment Fund is proper. It specifically refers to payment of "final judgments," as does 28 U.S.C. § 2517,[4] in order to protect the government from premature payment. The government then proceeds to question whether any portion of our prior judgment can be treated as final. As we explain below, we conclude that the award of damages can be treated as final for enforcement purposes.

Plaintiffs assert that § 1304 is not a bar because payment of *Winstar* judgments comes from the FSLIC Resolution Fund and not the Judgment Fund. It is the case that past payments on *Winstar* judgments are withdrawn from the FSLIC Resolution Fund. We do not view that fact as dispositive, however. Though § 1304 and its finality requirements only apply to payments from the Judgment Fund, a judgment must still be final for the purposes of § 2517. Unlike § 1304, however, § 2517 allows for partial *final* judgments and is not limited to partial final judgments entered pursuant to Rule 54(b). The question remains, therefore, whether a final judgment can be entered now in regard to the federally-insured thrifts and to the $134 million award.

In light of *King,* the answer depends on the effect of the remand. A different way to phrase the issue is, how much of the case is beyond our purview, or, how much is final? This brings up defendant's second line of argument.

Defendant claims that its appeal rights are not exhausted, and, consequently, nothing decided by the Federal Circuit is final; directing payment would therefore be contrary to law. The government cites *Christian v. United States* to explain its theory. In *Christian* we held that:

[T]he judgments payment statute for the Court of Federal Claims requires that payment be made only upon a certified full or partial "final judgment." *See* 28 U.S.C. § 2517 (2000). Judgments are final once they "have become conclusive by reason of

---

**3.** 31 U.S.C. § 1304 states, in relevant part:
(a) Necessary amounts are appropriated to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law when—
(1) payment is not otherwise provided for;
(2) payment is certified by the Secretary of the Treasury; and
(3) the judgment, award, or settlement is payable—
(A) under section 2414, 2517, 2672, or 2677 of title 28; section 203 of the National Aeronautics and Space Act of 1958 (42 U.S.C. 2473).

**4.** 28 U.S.C. § 2517 concerns the payment of judgments against the United States. It states:

(a) Except as provided by the Contract Disputes Act of 1978, every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropriation therefor, on presentation to the Secretary of the Treasury of a certification of the judgment by the clerk and chief judge of the court.
(b) Payment of any such judgment and of interest thereon shall be a full discharge to the United States of all claims and demands arising out of the matters involved in the case or controversy, unless the judgment is designated a partial judgment, in which event only the matters described therein shall be discharged.

loss of the right to appeal-by expiration of time or otherwise-or by determination of the appeal by the court of last resort." *See* GAO Office of General Counsel, Principles of Federal Appropriations Law, Vol. III, Ch. 14, at 58 (2d ed.1994) (citations omitted).

*Christian v. United States,* 49 Fed.Cl. 720, 727 (2001), *rev'd in part on other grounds,* 337 F.3d 1338 (Fed.Cir.2003).

Defendant's time to apply for *certiorari* for review of the Federal Circuit's decision expired, after two extensions, on November 25, 2005. Nevertheless, the government insists that it has not exhausted its appeal rights. Defendant contends that after we reach a decision on the Ohio-insured banks, it can pursue an appeal and, if necessary, seek a writ of *certiorari* not only on that issue but also on the issues decided in the previous appeal, including the $134 million award. It is not clear from defendant's argument whether it believes it retains this right even if it fully succeeds on remand. The government cites numerous cases to support its continuing appellate rights. *See Major League Baseball Players Assoc. v. Garvey,* 532 U.S. 504, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (considering issues decided during first appeal after entire case was remanded both times); *Virginia Military Inst. v. United States,* 508 U.S. 946, 113 S.Ct. 2431, 124 L.Ed.2d 651 (1993) (Scalia, J., concurring) (denying a petition for *certiorari* which sought intervention in litigation before final judgment); *Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916); *Panama R.R. v. Napier Shipping Co.,* 166 U.S. 280, 17 S.Ct. 572, 41 L.Ed. 1004 (1897) (deciding libel issues affirmed during first appeal after remand for decision on damages); *see also Jones v. United States,* 526 U.S. 227, 231–32, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (deciding whether the statute used to convict defendant in first trial defined three separate

criminal offenses or a single crime with different penalties, even though the statute was considered during the first appeal); *Mercer v. Theriot,* 377 U.S. 152, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964) (considering questions from first appeal after whole case was remanded). In its brief, defendant states, "There is no suggestion in our cited cases that the Supreme Court would not entertain issues decided in an initial appeal that affirmed judgment in sum certain ...." Def.'s Sur–Resp. in Opp'n to Pls. Mot. for a Partial J. and an Order Directing Def. to Pay Partial J. at 5.

Plaintiffs insist that our first judgment was a final judgment and that it was affirmed with regard to the $134 million award; now that the deadline for *certiorari* has expired, defendant has exhausted its appeal rights on that decision. It is not necessary for us to reject defendant's position on this point to address the issue. Defendant's argument assumes that the questions previously addressed and affirmed by the Federal Circuit have not been directed by this court to be deemed a partial final judgment. Defendant may indeed have appeal rights once again, but they will flow from this order.[5]

Our reading of the remand order is that our charter was only to determine liability and damages as to Ohio-insured thrifts. All matters decided by the Federal Circuit have been made the law of this case. We would not be permitted, on remand, to rule inconsistently with what has been decided. Most critically, the government's liability as to the $134,045,000 determination is fixed. In effect, the Federal Circuit severed the case when it remanded, as the only aspect of the case which remains for our disposition is the Ohio transaction as it relates to the state-insured institutions. There is therefore no possibility of conflict and, due to the lack of interest accrual, every reason to issue a partial judgment with respect to the non-state insured institutions and, specifically with respect to

---

**5.** Plaintiffs and defendant submitted additional briefing to call the court's attention to *Westfed Holdings, Inc. v. United States,* 68 Fed.Cl. 661 (2005). In that case, the trial court ordered payment of a judgment while defendant was still

considering whether to file for *certiorari* to the Supreme Court. Because there is no longer an appeal pending here, *Westfed* is not directly on point.

the affirmance of the prior judgment for $134,045,000.

## CONCLUSION

Plaintiffs' "Motion for a Designation of Partial Summary Judgment with Respect to $134,045,000 Award and an Order Directing Defendant to Pay Such Judgment" is granted. The clerk is directed to enter a partial final judgment in favor of plaintiffs against the United States in the amount of $134,045,000. Defendant is directed to certify the partial judgment for payment of $134,045,000 to the FLSIC Resolution Fund.