**NATIONAL AUSTRALIA BANK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–690C.**

United States Court of Federal Claims.

Nov. 17, 2006.

Paul Martin Wolff and Ryan T. Scarborough, Washington, D.C., for plaintiff.

Scott D. Austin, U.S. Department of Justice, Trial Attorney, Civil Division, Commercial Litigation Branch, for defendant. With

him on the brief was Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director.

## OPINION

BRUGGINK, Judge.

This case returns to us on remand from the Federal Circuit. In our most recent decision, *National Australia Bank v. United States,* 63 Fed.Cl. 352 (2004) *("NAB III"),* we granted plaintiff's motion for summary judgment, finding that plaintiff was not allowed to deduct $103,155,357 in covered-asset losses on its tax returns because of the government's breach of an implied duty in its contract with plaintiff's predecessor in interest, which resulted in an additional $36,135,373 in taxes paid. We determined that, based on a prior "Termination Agreement" with the government, plaintiff was entitled to a tax benefits sharing ratio of 75% of the $36,135,373 in tax savings, or $27,101.530. On appeal, the Federal Circuit, in *National Australia Bank v. United States,* 452 F.3d 1321 (Fed.Cir. 2006) *("NAB IV"),* affirmed our determination as to the government's liability, but reversed our ruling as to the correct tax benefits sharing ratio applicable in the event of such a breach. The Federal Circuit remanded the case to determine the ratio agreed upon by the parties and to consider extrinsic evidence to determine whether reformation of the Termination Agreement might better reflect the parties' original intent.

Trial on the remand issue is scheduled for February 2007. Now pending is plaintiff's motion for partial judgment for immediate payment of what it alleges is the minimum undisputed quantum of damages owed. The matter is fully briefed.

## BACKGROUND

We assume familiarity with most of the background facts of our prior decisions which give rise to this *Winstar*-related[1] tax benefit litigation. *See Nat'l Australia Bank v. United States,* 54 Fed.Cl. 238 (2002) *("NAB I"); Nat'l Australia Bank v. United States,* 55 Fed.Cl. 782 (2003) *("NAB II"); NAB III,* 63

Fed.Cl. 352. In 1988, plaintiff's predecessor in interest entered into an agreement ("Assistance Agreement") with the Federal Savings and Loan Insurance Corporation ("FSLIC") to acquire Beverly Hills Savings & Loan, a failing savings and loan institution. FSLIC agreed to reimburse plaintiff for so-called "covered-asset losses." Under the tax law applicable at the time, plaintiff could deduct the losses from its taxable income, and the reimbursement payments received from FSLIC would not be characterized as taxable income. Pursuant to the Assistance Agreement, plaintiff was required to maximize its tax benefits for the covered-asset losses because plaintiff shared some of the tax benefits with FSLIC. The Assistance Agreement established a tax benefit sharing ratio of 75/25 in favor of plaintiff. The subsequent enactment of the "Guarini" legislation, Pub.L. 103–66, § 13224, 107 Stat. 312 (1993), eliminated the tax deduction for covered-asset losses. As a result, plaintiff and FSLIC terminated the Assistance Agreement and executed the Termination Agreement in 1994, which established a different tax benefit sharing ratio. The new ratio was 50/50. The parties dispute the significance and application of the 50/50 ratio in the language of the Termination Agreement, which is the subject of the forthcoming trial.

In *NAB II,* we found the government liable for expectancy damages because it breached an implied covenant of good faith and fair dealing when it retroactively eliminated the tax benefits through the enactment of the Guarini legislation. In *NAB III,* we found that plaintiff met its burden of proof in demonstrating expectancy damages with reasonable certainty. We also held that the tax benefit sharing ratio of 75/25 was applicable in quantifying plaintiff's damages, which meant that plaintiff received 75% of the benefits of the covered-asset loss deduction, while FSLIC received 25%. *See NAB III,* 63 Fed.Cl. at 362–363. The government appealed our decisions in both *NAB II* and *NAB III.* In *NAB IV,* the Federal Circuit affirmed in part, reversed in part and remanded.

1. *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

## DISCUSSION

The issue is whether, in light of the mandate from the Federal Circuit, entry of partial judgment is appropriate before we hold trial to determine the correct percentage of tax benefits to which plaintiff is entitled. Plaintiff argues that it is appropriate to enter partial judgment because there is a minimum quantum of damages that is not in dispute. Plaintiff contends that the only issue on remand is whether the Termination Agreement calls for a 75/25 tax benefit sharing ratio, or a 50/50 split. Because the government has consistently argued that the correct ratio is 50/50, plaintiff contends that it is uncontroverted that plaintiff is entitled to at least 50% of the $36,155,357 tax savings, or $18,067,687. As support for its motion, plaintiff emphasizes that, because it is not entitled to prejudgment interest, the value of damages continues to be diluted by the time-value of money, costing plaintiff nearly $1 million for every year that the damages are unpaid. The government argues in opposition that: (1) the government has not exhausted its appeal rights, (2) the Federal Circuit reversed our award as to the quantum of damages, (3) plaintiff cannot meet the standard for partial judgment under Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC"), and (4) considerations of judicial economy weigh against partial judgment. Because the government's second argument is sufficient to dispose of plaintiff's motion, we refrain from addressing the remaining three.

■ As a preliminary matter, we must first resolve what the Federal Circuit established in *NAB IV*. In so doing, we are reminded that "[a]ll matters decided by the Federal Circuit have been made the law of this case. We would not be permitted, on remand, to rule inconsistently with what has been decided." *Home Savings of America, F.S.B. v. United States*, 69 Fed.Cl. 187, 192 (2005).

In *NAB IV*, the Federal Circuit affirmed our determination of the government's liability in *NAB II*. *See* 452 F.3d at 1325. The Federal Circuit also affirmed our determination in *NAB III* of the availability of expectancy damages. *Id.* at 1327. In *NAB III*, we first determined that the Guarini legislation eliminated plaintiff's tax deduction for covered-asset losses in the amount of $103,135,373, and, as a result, plaintiff paid an additional $36,155,357 in taxes. We then determined that the appropriate tax benefit sharing ratio was 75/25 in favor of plaintiff, awarding $27,101,530 in damages (75% of $36,155,357). In affirming our grant of summary judgment, the Federal Circuit rejected the government's arguments that plaintiff did not prove its covered-asset losses with reasonable certainty and that we erroneously shifted the burden of proving damages to the government. *Id.* at 1326. Therefore, the Federal Circuit affirmed our determination that plaintiff's covered-asset losses amounted to $103,135,373.

The Federal Circuit, however, reversed our finding that the Termination Agreement incorporated the Assistance Agreement's 75/25 tax benefit sharing ratio as the agreed-upon measure of damages in the event of litigation between plaintiff and FSLIC. *Id.* at 1328 (Termination Agreement "is ambiguous and does not, on its face, support the trial court's conclusion that the 75/25 split applies to damages accruing to NAB ... award of damages must therefore be reversed"). The Federal Circuit remanded the case and directed us to ascertain the true intentions of the parties in drafting the Termination Agreement. *Id.* at 1329. It also directed us to determine, based on a review of extrinsic evidence, whether reformation of the Termination Agreement is appropriate. *Id.* at 1330.

■ Plaintiff cites the language of 28 U.S.C. § 2517 (2000), and the holdings in *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed.Cir.1987) and *Home Savings*, 69 Fed.Cl. 187, as authority for the court to enter partial final judgment prior to our consideration of the remanded issues. Partial final judgment is authorized by 28 U.S.C. § 2517, which concerns the payment of judgments against the United States:

(a) Except as provided by the Contract Disputes Act of 1978, every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropria-

tion therefor, on presentation to the Secretary of the Treasury of a certification of the judgment by the clerk and chief judge of the court.

(b) Payment of any such judgment and of interest thereon shall be a full discharge to the United States of all claims and demands arising out of the matters involved in the case or controversy, or unless the judgment is designated a *partial judgment*, in which event only the matters described therein shall be discharged.

28 U.S.C. § 2517 (emphasis added).

In *Home Savings*, we noted the distinction between the authorization for a partial judgment under 28 U.S.C. § 2517(b), and the partial judgment allowed under Rule 54(b).[2] 69 Fed.Cl. at 189–190. We explained that "Rule 54(b) presents a trial court with options prior to appeal," whereas the partial judgment mechanism under 28 U.S.C. § 2517 is not so limited because the "statute does not specify that partial judgment must originate from the use of [Rule 54(b)]." *Id.* The statute thus provides for the entry of partial final judgment, irrespective of whether the matter is pre– or post-appeal. This is consistent with the holding in *King*, where the appellant argued that the district court's entry of partial judgment was improper because it impermissibly split a single claim, contrary to Rule 54(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").[3] 814 F.2d at 1563. The Federal Circuit rejected appellant's argument that Rule 54(b) is the "only source of authority for finally deciding less than the entire case," and held that the district court's post-appeal entry of partial judgment as to the affirmed portion of the court's original single judgment was proper. *Id. King*, therefore, stands for the proposition that, after the appellate court affirms a specific portion of the trial court's original single judgment, it is permissible for the trial court on remand to split that judgment by directing partial judgment on the affirmed portion. *Id.*

■ While partial judgment is thus appropriate in some circumstances, this is not one of them. The facts in *King* and *Home Savings* are readily distinguishable from those in this case. In *King*, the trial court found that Otari infringed King's valid patent and awarded King two categories of damages. The first category was for lost profits ("machine damages") and the second category related to the sale of spare parts ("spare parts damages"). The Federal Circuit affirmed the court's award of machine damages in the amount of $2,282,935, but reversed and remanded as to the spare parts damages because of an insufficient record. On remand, and prior to further proceedings, the trial court entered partial judgment as to the affirmed machine damages of $2,282,935 (plus interest). Otari appealed to the Federal Circuit, essentially challenging the trial court's right to split its original judgment. The Federal Circuit explained that even though it did not affirmatively direct the trial court to enter a partial judgment on remand, the trial court had such authority, and in doing so, the court's action was consistent with the Federal Circuit's mandate. *Id.* at 1563.

In *Home Savings*, another *Winstar* related case, there were two distinct types of transactions—those involving federally-insured thrifts, and those involving Ohio-insured thrifts. We awarded damages with respect to federally-insured thrifts, but denied recovery with respect to the Ohio-insured thrifts. On appeal, however, the Federal Circuit vacated and remanded our decision with respect to the Ohio-insured thrifts, while affirming the finding of liability and damages in the specific amount of $134,045,000 for the federally-insured thrifts. On remand, we entered partial judgment with respect to the $134,045,000 because the "government's liability ... [was] fixed" as to that aspect of the case and there was "no possibility of conflict." 69 Fed.Cl. at 192.

In both *King* and *Home Savings*, therefore, the trial courts entered partial judgment on remand after the Federal Circuit

---

**2.** Rule 54(b) provides that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ..."

**3.** RCFC 54(b) is almost identical to Fed.R.Civ.P. 54(b).

clearly affirmed a definitive award quantum. In addition, there were two segregable categories of damages, which enabled the Federal Circuit to find reversible error in the calculation of damages in one distinct category, without that error tainting the calculation of damages in the other category.

Here, there was only one transaction, and ultimately, there will only be one correct calculation of damages. An appeal from a partial judgment would thus unavoidably duplicate both liability and damages issues in the event of a subsequent appeal of the final judgment. Both judgments would arise out of a single indivisible transaction. Because the Federal Circuit found error in our award of a specific quantum of tax benefits to plaintiff, it did not effectively "sever[ ] the case when it remanded," as it did in *Home Savings*. After finding our award of tax benefits damages to be in error, there was not a second category of damages for the Federal Circuit to affirm. Although the appellate court was satisfied with our determination of the amount of covered-asset losses (i.e., $103,135,373), it did not affirm a specific quantum of damages because the intention of the parties as to the correct benefits sharing ratio was ambiguous. The Federal Circuit, therefore, neither affirmed a specific quantum of damages, nor did it affirm a minimum quantum of damages. In neither *King* nor *Home Savings* did the moving party ask the court to estimate what it thought would be a minimum quantum of damages and enter partial judgment before it held trial to determine the actual quantum of damages, which is precisely what plaintiff is asking us to do here.

While it may appear, based on the parties' briefs throughout the litigation, that the only result at trial will be whether plaintiff is entitled to either 50% or 75% of the tax benefits, we cannot reach such a definitive conclusion without reconsidering the evidence. In fact, the government's current contention that plaintiff is entitled to $17,054,381, an amount less than 50% of the tax benefits, is illustrative of the remaining uncertainty over the quantum to which plaintiff is entitled, something that can only be resolved after trial. It would, therefore, be premature to enter judgment with respect to a portion of damages.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for partial judgment is denied.